UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 3:19-CV-0339-GCS |
| | ) |
| THOMAS SMITH, | ) |
| JOSHUA DEAN, | ) |
| and CHARLES TOW, | ) |
| | ) |
| | ) |
| Defendants.[1] | ) |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION

Before the Court is Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (Doc. 17, 18).[2] *Pro se* Plaintiff James Bailey opposes the motion (Doc. 21). Based on the following reasons, the undersigned **GRANTS** the motion for summary judgment on the issue of exhaustion of administrative remedies.

Pursuant to 42 U.S.C. § 1983, Bailey filed his complaint for deprivations of his

---

[1] The Court **DIRECTS** the Clerk of the Court to change the docket to reflect defendants' correct names as contained in their answer (Doc. 13).

[2] Pursuant to Federal Rule of Civil Procedure 56, *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992), and *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), Defendants provided Bailey with the required notice informing him of the consequences of improperly failing to respond to the motion for summary judgment (Doc. 19).

constitutional rights that occurred at Big Muddy River Correctional Center ("Big Muddy") (Doc. 1). After conducting the preliminary review pursuant to 28 U.S.C. § 1915A, Bailey was allowed to proceed on an Eighth Amendment excessive force claim against Defendants for physically assaulting him on January 28, 2019 – Count 1 (Doc. 7, p. 3-4). Bailey alleges he was tackled, beaten, put in leg irons, and dragged to segregation exposed from the waist down in response to him attempting to open a door. *Id*. He seeks monetary damages.

On February 7, 2020, the Court held a hearing on the summary judgment motion and took the matter under advisement. During the hearing the Court heard testimony from Debbie Knauer, a chairperson with the Administrative Review Board ("ARB") and Bailey.[3] As the motion for summary judgment is ripe, the Court turns to address the merits of the motions.

**FACTS**

The following facts are taken from the record and presented in the light most favorable to Bailey, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStanfano*, 557 U.S. 557, 586 (2009).

On January 28, 2019, Bailey was incarcerated at Big Muddy. He got into a dispute with his cellmate, and correctional officers were alerted to the situation and escorted

---

[3] Knauer testified about the grievance process in the IDOC and her duties in regard to the grievances that are assigned to her. She also testified as to why she returned Bailey's grievance to him on March 1, 2019.

Bailey from his cell to another area in the prison. Also, on January 28, 2019, Bailey filed an emergency grievance for staff conduct for excessive force arising out of the incident alleged in the complaint.

On January 31, 2019, Chief Administrative Officer, Warden Daniel Sullivan deemed the grievance a non-emergency and directed Bailey to submit the grievance in the normal manner. On February 7, 2019, Counselor E. Shelton responded to the grievance as follows: "Internal Affairs Has Been Notified And Given A Copy of This Grievance . . . Your Allegations." Thereafter, on February 24, 2019, Bailey wrote a letter to the ARB asking for a response/remedy to the incident that occurred on January 28, 2019.

The ARB received a copy of the grievance along with Bailey's February 24, 2019 letter on February 28, 2019. The next day, Debbie Knauer, of the ARB, returned Bailey's grievance for the following reasons:

> Additional information required: Provide your original written Offender's Grievance, DOC 0046, including counselor's response, if applicable. Provide a copy of the Response to the Offender's grievance, DOC 0047, including the Grievance Officer's and the Chief Administrative Officer's response, to appeal, if timely.

On March 25, 2019, Bailey filed his lawsuit against Defendants.

During the hearing Bailey testified that the grievance counselor and the grievance officer were the same person, *i.e.*, E. Shelton, and indicated he was confused by how to handle such a situation. Bailey, however, also testified that he understands who does what, when and how at the facility regarding the grievance process. Bailey also asserted that he has no other documents to provide the Court

and that he did not do anything further after Knauer returned the grievance to him.

**LEGAL STANDARDS**

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and

the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following sequence and procedures to be followed:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining
> that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the Illinois Department of Corrections, Bailey was required to follow the regulations contained in the Illinois Department of Correction's

Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved

to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures further allow some grievances to be submitted directly to the ARB for consideration. *See* 20 ILL. ADMIN. CODE § 504.870(a). Those grievances include:

1) Decisions regarding protective custody placement, including continued placement in or release from protective custody.

2) Decisions regarding the involuntary administration of psychotropic medication.

3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.

4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

20 ILL. ADMIN. CODE § 504.870(a)(1-4).

## ANALYSIS

Defendants argue that Bailey attempted to circumvent the standard grievance procedure by filing this lawsuit. Specifically, Defendants assert that Bailey failed to resubmit his grievance through the proper procedures once it had been deemed a non-emergency by the Chief Administrative Officer. Bailey counters that there are numerous disputes of fact and that Defendants failed to meet their burden of proof regarding exhaustion. Specifically, Bailey maintains that the counselor and the grievance officer are one and the same and that the Defendants thwarted his attempts to exhaust his administrative remedies. The Court disagrees with Bailey.

First, the Court notes that the record indicates that Bailey was aware of the grievance procedures at Big Muddy. Bailey testified he received the orientation manual that contains the grievance procedure process and that he understood who does what, when and where at Big Muddy. Further, Bailey testified that he should have paid more attention to the matter. Clearly, administrative remedies were available to Bailey and they were not pursued properly.

Next, the record reflects that Bailey failed to wait the two months allotted in the grievance procedure process for the grievance officer to issue his report regarding Bailey's complaint. *See, e.g.,* 20 ILL. ADMIN. CODE § 504.830(e)(stating that "[t]he Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the

grievance, when reasonably feasible under the circumstances. . . . The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing."). Bailey failed to wait for the two month time period to expire. This two month period and mandatory step in the grievance process would have given the prison the time to complete its Internal Affairs investigation and to allow the grievance officer to issue the report.

Bailey, however, contends he was confused by the situation of the counselor and the grievance officer being the same. Apparently, Bailey believed that Counselor Shelton's February 7, 2019 response doubled as the grievance officer's response, even though it was clearly labeled as a "Counselor's Response." The plain language of Counselor Shelton's February 7, 2019 response only indicated that Internal Affairs had been notified and given a copy of Bailey's grievance. Thus, even if the counselor and grievance officer were the same, Shelton's response cannot reasonably be construed as the grievance officer's recommendation in the matter; rather it is an indication that the matter is under investigation. But, even if it was the grievance officer's recommendation, Bailey still did not have the Chief Administrative Officer's final decision. The Chief Administrative Officer's decision is required before an inmate can appeal the matter to the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a).

Furthermore, the record reflects that Bailey did not heed the ARB's guidance when it returned the grievance on March 1, 2019. The ARB specifically told Bailey why his grievance was deficient. The ARB further informed Bailey how to rectify the problems

with his grievance and told him to resubmit the grievance if timely. Had Bailey followed the ARB's advice, he would have fully exhausted his administrative remedies.[4] Bailey did nothing.

Given the above facts, Bailey did not exhaust his administrative remedies as to his claim against Defendants. A prisoner cannot properly exhaust his administrative remedies if he files suit during the pendency of the grievance process; nor can a prisoner file suit and then exhaust administrative remedies while the suit is pending. *See Ford*, 362 F.3d at 398.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 17). The Court **DISMISSES without prejudice** Bailey's claims against Thomas Smith, Joshua Dean and Charles Tow in Count 1 for failure to exhaust administrative remedies. Thus, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED.**

Date: February 10, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.02.10 15:17:08 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

---

[4] It appears that Bailey's grievance would have been timely had he followed the ARB's guidance. Under the grievance process, inmates have 60 days from the date of the incident to start the grievance procedure. *See* 20 ILL. ADMIN. CODE § 504.810(a). The incident occurred on January 28, 2019 and the ARB returned the grievance on March 1, 2019.